BURNS & McDONNELL ENGINEERING COMPANY, Appellant, v. IOWA CITY et al., Appellees, C. A. SCHMIDT, Intervenor.

No. 44442.

1242

DECEMBER 13, 1938.

REHEARING DENIED APRIL 7, 1939.

Kenneth M. Dunlop and D. C. Nolan, for appellant.

Will J. Hayek and Robert L. Larson, for appellees.

Dutcher, Ries & Dutcher, for intervenor.

RICHARDS, J.—At a special election held in the city of Iowa City on April 17, 1934, the following question was submitted to a vote:

"Shall the City of Iowa City, Iowa, establish, erect, extend, maintain and operate, within or without its corporate limits an electric light and power plant, with all the necessary poles, wires, machinery, apparatus and other requisites of said plant; the maximum amount which may be expended for the establishment, construction or acquisition of such plant shall be $917,000.00,

to be paid for out of the future earnings of said plant, and as provided by sections 6134-d1 to 6134-d7, inclusive, of the Code of Iowa, 1931, as amended by Senate File No. 103, [ch. 74] passed by the 45th General Assembly, Special Session?'' Code 1935, §6134-d1 et seq.

The proposition carried, a majority of the legal electors voting in the affirmative. Upon authority of this election the city council, on April 17, 1935, enacted Ordinance No. 1662, ordaining that:

''The City of Iowa City, Iowa, shall establish, erect, extend, maintain and operate, within or without its corporate limits, an electric light and power plant, with all the necessary poles, wires, machinery, apparatus and other requisites of said plant at a maximum expenditure of $917,000.00 for the establishment, construction, or acquisition of such plant to be paid for out of the future earnings of said plant, and as provided by Sections 6134-d1 to 6134-d7, inclusive, of the Code of Iowa, 1931, as amended by Senate File No. 103, passed by the 45th General Assembly, Special Session.''

On May 3, 1935, a written contract, contemplating performance of engineering services by plaintiff and one Schwob in connection with the proposed plant, was signed by the city as one party, and by plaintiff and Schwob as the other parties thereto. In its petition plaintiff set out, declared upon, and claimed to be the owner of this contract, alleged the performance by plaintiff and Schwob of their undertakings thereunder, alleged a demand on the city for payment of the amount agreed in the contract to be paid for performance of said undertakings, alleged refusal of payment, and demanded judgment against the city for $11,534.60. Defendants filed answer, and C. A. Schmidt a petition of intervention, uniting with defendants in resisting the claims of plaintiff. A further pleading was filed by plaintiff, denominated a reply. The cause came to trial. When all parties had offered their evidence and had rested, defendants and intervenor moved that a verdict be directed against plaintiff in favor of the city. The grounds thereof were ten in number. The motion was sustained, a verdict directed, and a judgment entered against plaintiff. Therefrom it has appealed. The question here is whether the district court erred in sustaining the motion.

1244

Because determinative of that question, we direct discussion to grounds 3, 4 and 7 of the motion, which were, in substance, that a verdict should be directed against plaintiff because the contract sued on does not entitle plaintiff to a general judgment against the city, payable from funds raised by general taxation; that under the contract plaintiff is not entitled to be paid from funds of the city derived from taxation.

By the terms of this contract plaintiff and Schwob agreed to conduct a survey of the "proposed power and light plant and distribution system," to prepare detailed plans and specifications covering all the equipment and construction work, including power plant, equipment, general building and structures and distribution system, to attend the letting of contracts, to advise and assist in the proper selection of materials and equipment, to furnish an experienced engineer for supervision of the construction and inspection of all material, to conduct final operating tests upon completion of construction of the works, to furnish a schedule outlining a plan of operation and management, and to furnish engineering advice and testimony should the project be subjected to injunction or injunctions. In the contract it was provided that in consideration of their services the city would pay to Schwob and plaintiff an amount equal to 5% of the actual cost of the improvement. There were also conditional provisions respecting compensation that are not here important.

Plaintiff's claim did not arise on account of services performed as a preliminary to ordering that the above mentioned question be submitted to a vote at the special election, but is a claim for compensation for services that were performed subsequently to the election and the passage of Ordinance No. 1662. Defendants urge and plaintiff admits in its pleadings and testimony that these engineering services, that were performed by plaintiff and Schwob under the written contract, were a necessary part of the constructing of the plant, and that compensation for such services was necessarily included in and a part of the cost of the establishment and erection of the plant. We agree that such was the case. The cost of the plant, which included plaintiff's compensation, was to be paid out of the plant's future earnings. Of that fact the statutes that were identified in the question submitted to the voters, and in Ordinance No. 1662, were determinative. And we have repeatedly held that the

erection of a plant under authority of these statutes, Code 1935, §6134-d1 et seq., which are often referred to as the Simmer law, does not result in the incurring of a general obligation; that the cost is not in any manner payable by taxation. Greaves v. City of Villisca, 217 Iowa 590, 251 N. W. 766; Wyatt v. Town of Manning, 217 Iowa 929, 250 N. W. 141; Iowa Pub. Service Co. v. Parsons, Iowa, 272 N. W. 613.

When defendants in their answer set up the foregoing propositions as a defense to plaintiff's demand for a judgment that would be a general obligation of the city, plaintiff (in a manner later mentioned) amended its petition. The substance of the amendment was: That on August 6, 1937, the city council enacted Ordinance No. 1782, thereby in terms repealing Ordinance No. 1662, and adopted a resolution that the city's application for a Federal grant and loan in the sum of $917,000.00 for the purpose of building a municipal power and light plant be withdrawn and rescinded; that by reason of said acts of its city council the defendant municipality became disabled from performing its contract with plaintiff and from paying plaintiff the amount due under the contract out of the special fund (income of the plant) from which it was to have been paid; that by reason thereof defendant city is estopped from denying its liability to plaintiff, and the claim of plaintiff is now a general obligation of defendant city for the full amount thereof. In this amendment plaintiff prayed as in its original petition, and further that judgment in favor of plaintiff be entered against the city for $11,534.60 plus interest and that such judgment be entered as a general obligation of the city; that defendant municipality be ordered and directed to pay same, and that the councilmen and officers of defendant city be ordered to take such steps as may be necessary to obtain funds to pay said judgment and costs in event defendant city may not have a sufficient amount in its general fund to pay such judgment.

As already said, the cost of an electric light and power plant is not in any manner payable by taxation, when projected, as was this proposed plant, by authority of the Simmer law. Obviously this would preclude the rendering of a general judgment for such cost, because the adjudication would be that the thing be done that the statute inhibits, that is, that the cost be paid with money raised from taxation. Unless by reason of the matters found in the amendment to its petition it appears that

plaintiff is not amenable to these statutes, the statutes will prevail.

Plaintiff's argument, respecting what it claims under the amendment to its petition, may be thus summarized; in the written contract in suit there was an implied obligation on part of the city to construct the plant; the enactment of Ordinance No. 1782 and the adoption of the resolution disabled the city from performing this implied obligation; the acts of the city council, disabling the city to perform its implied obligation to construct a plant, were wrongful, and resulted in plaintiff being deprived of income from a plant for payment of its services; consequently by reason of said acts of the city council the city is estopped to deny general liability for plaintiff's services.

To support plaintiff's first premise, i. e., that there was an implied obligation to construct the proposed plant, plaintiff points to the special election and to Ordinance No. 1662. Because the proposal had carried at the special election, and because Ordinance No. 1662 had been enacted, plaintiff says that the city, in thereafter contracting with plaintiff, impliedly said to plaintiff that "Iowa City would proceed with due diligence to establish a municipal light plant and create a special fund, either from the sale of bonds or the sale of electricity out of which to pay you."

██ It does not appear that the alleged implied obligation was imposed by reason of the special election. True, section 6131, Code 1935, required that no such plant be authorized or erected by the city unless a majority of the legal electors voting thereon vote in favor of the same. But there appears in this statute no legislative intendment other than that the approval of the question at the election would constitute the city's authority to function in the premises in such manner as the city council, in its discretion, might eventually determine. To the action of the voters at the election nothing more is to be ascribed.

As to whether Ordinance No. 1662 affords a basis for the first premise of plaintiff's argument, a reading of this ordinance makes evident that the proposed establishing, erecting and operating of an electric plant by the city was to be as provided by the statutes, that for brevity we have been designating as the Simmer law. Clearly the proposing to do these things in the manner prescribed in these statutes, carries no implication or suggestion that the city was committing itself to an obligation,

the undertaking of which would be contrary to and violative of these same statutes. For the city would not be definitely proposing to proceed in the manner required by these statutes, and at the same time, by implication, be assuming an obligation violative of their provisions, intent, and purposes. There appeared nothing in the ordinance that supported the alleged implication. It would be an implication not within the pale of reason. That the assuming of the alleged implied obligation would be violative of the Simmer law becomes evident when it is realized that the obligation would be that the city council would exercise no discretion, except a discretion to contract for and erect a plant. It would be an obligation to so exercise its discretion in any event, and the undertaking of such an obligation would be in advance of a time when the determining factors were known or could be ascertained. The obligation would be to erect a plant regardless of whether it later became an evident fact that plans and specifications could not be devised for erecting a plant that would be an adequate and adaptable one at a cost within the restricted amount, and regardless of whether or not fair and conscionable bids for construction were obtainable. The duty to exercise an honest discretion as to these and other questions of paramount importance, and to be governed by what was in the public interest, after giving notice to the public of the time and place when and where the council would meet for these purposes, the Simmer law imposed on this city council as public officials. The implied obligation would be an undertaking that these statutory duties would not be controlling. Neither in this Ordinance No. 1662 nor in the special election do we find anything of substance that looks in the direction of an assuming by the city of the alleged implied obligation. Nor could plaintiff successfully assert that by implication there was an obligation on the part of the city council to do that which was unlawful and contrary to public policy, and beyond the powers of the city council, the plaintiff in dealing with this municipality being bound to take notice of such legislative restrictions upon its authority. Citizens Bank of Des Moines v. City of Spencer, 126 Iowa 101, 101 N. W. 643; Horrabin Paving Co. v. City of Creston, 221 Iowa 1237. 262 N. W. 480.

The inferences plaintiff would draw from the election and from Ordinance No. 1662 we can not adopt. And it may be further said that of reliance by plaintiff on any alleged implied

obligation there is no showing. There are these facts in the record that indicate the contrary. On July 2, 1935, plaintiff presented to the city a statement for services rendered under the same written contract in the sum of $10,248. Soon thereafter an action was brought by a taxpayer against the city in a court of competent jurisdiction wherein on August 15, 1935, the city was enjoined from paying plaintiff for any engineering services, from any funds raised by taxation. The injunction continued in force and effect at the time the case at bar was tried. In November 1935 the claim for $10,248 that had been presented to the city on July 2, 1935, was paid to plaintiff, but not from funds of the city raised by taxation. The payment was from Federal funds. Thereafter plaintiff commenced performing the services for which it is now suing, in the latter part of November or the first part of December 1935. All these matters were then within the knowledge of the plaintiff including the fact that it had been adjudicated in the action between the taxpayer and the city that no money derived from taxation was payable for any services plaintiff might render. If any conclusion were to be drawn it would be that plaintiff knew payment for the services it was performing was in fact contingent upon a plant ultimately being constructed and operated, creating net earnings from which its cost could be paid.

Although in its plea of estoppel as found in the amendment no claim is made that the enactment of Ordinance No. 1782 and the adoption of the resolution were wrongful acts, in argument plaintiff does assert that proposition. But these acts of the city council were performances of statutory duties imposed upon them, in the exercise of their discretion, and plaintiff's only reason for urging that a wrongful character inhered in these acts, is that they were violative of the alleged implied obligation. In what already has been said are the reasons we can not agree.

We are of the opinion that the record would not sustain a finding that the city was estopped to deny a general obligation for the services that may have been performed under the contract in suit. The essential elements of the pleaded estoppel do not appear. The motion was rightly sustained. Its remaining grounds need not be discussed.

In the forepart of the opinion we reserved for further comment the manner in which plaintiff amended its petition. The amendatory averments were contained in the pleading al-

ready mentioned, denominated a reply. A portion of this pleading was evidently intended to be an amendment to the petition and a departure therefrom. This portion, found in the reply, though amenable to motion, was not assailed by defendants or intervenor. The question of proper pleading was not raised. Defendants filed amendments to their answers touching on the amendatory matter that was in the reply as though that portion of the reply had been designated as an amendment to the petition. The parties without objection based on the rules of pleading offered evidence pertaining to the amendatory matters. Nor in this court do defendants or intervenor raise the question. We conclude that the parties accepted these issues contained in the reply, and tried the case in the district court and are submitting it here on the theory that the described portion of the reply was pleaded as an amendment to the petition. Whatever objections there may have been on account of nonconformity with the statutes prescribing rules of pleading the parties have waived. Willson v. Harris Bros., 68 Iowa 443, 27 N. W. 374; Adams County v. Hunter, 78 Iowa 328, 43 N. W. 208, 6 L. R. A. 615.

The judgment of the trial court is affirmed.—Affirmed.

SAGER, C. J., and HAMILTON, KINTZINGER, DONEGAN, MITCHELL, and MILLER, JJ., concur.

ANDERSON, J., dissents.